WILSON, J„
for the Court:
¶ 1. As Christopher Lee was leaving the Gold Strike Casino[1] in Tunica, he was assaulted by another patron, arrested, and charged with disturbing the peace and disorderly conduct. After all charges against him were dismissed, Lee sued Gold Strike and its employee Adrian Thomas for negligence and intentional torts. At trial, at *1132 the close of Lee’s case-in-chief, the circuit court granted the defendants’ motion for a directed verdict. Lee appealed. Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. On March 9, 2008, Lee went to Gold Strike Casino to see a band perform at the Stage Bar. Lee, who then worked as a chef at Fitzgerald’s Casino, left work late and stopped at the Horseshoe Casino for drinks before walking over to the Gold Strike sometime in the early morning hours of March 9. Lee said that once inside the Stage Bar, he realized that he had left his cigarettes in his car, which he had parked back at the Horseshoe Casino. He noticed a group of men smoking at a nearby table, and so he walked over to their table to ask if he could buy a cigarette. One of the men, John Mack Young, refused and began loudly cursing Lee. Lee went back to his table but said that Young continued to yell at him. Lee testified that he walked back over to Young’s table in an effort to calm him down. He testified that he also asked casino security officers for help. Eventually, casino security officers separated Young and Lee and told both to leave the casino. Security officers told Young to leave first. Once they believed that Young had left the building, they told Lee to leave. This occurred sometime after 3 a.m.
¶ 3. However, Young had not left the building. Instead, he was in the atrium between the door to the casino and the outside doors to the parking lot. When Lee passed by Young in the atrium, the two exchanged words again, Young pushed Lee, and a physical altercation ensued. Although most of the altercation occurred outside the view of the casino’s surveillance camera, Young can also be seen briefly throwing punches at Lee. When casino security officers arrived, Young admitted to assaulting Lee and was detained immediately.
¶ 4. The security officers then talked to Lee. Lee claimed that he told them that he was injured and needed an ambulance, which they refused to call. There is no dispute that Lee was then told to leave the property, that he refused to leave, and that casino security officers handcuffed him and took him to the casino’s security interview room because he refused. Lee testified that he refused to leave because if he “would have left that night, then Gold Strike would have said that [he] hurt [himself] somewhere else.” When officers from the Tunica County Sheriffs Department arrived, the casino’s employees pressed charges against Lee for disturbing the peace. The sheriffs department also charged Lee with disorderly conduct. The Tunica County Justice Court later dismissed both charges.
¶ 5. On March 6, 2009, Lee filed a complaint in the Tunica County Circuit Court against Gold Strike and one of its security officers, Adrian Thomas, asserting claims of negligence, assault and battery, malicious prosecution, false imprisonment, and intentional infliction of emotional distress. Lee alleged and presented evidence at trial that during the altercation with Young, he had fractured and suffered other injuries to his arm and elbow, which required outpatient surgery and rehabilitation. A jury trial began on March 17, 2014. At the conclusion of Lee’s case, the circuit judge granted Gold Strike’s motion for a directed verdict on all claims. In a subsequent written order, the judge explained that, even if Lee remained an “invitee” after he was asked to leave the property, he failed to produce evidence that Gold Strike knew or should have known about Young’s violent nature or that there was an atmosphere of violence at the casino. Alterna *1133 tively, the judge also concluded that Lee ceased to be an invitee when the casino initially told him to leave. In addition, the judge concluded that Lee had failed to present evidence sufficient to support any of his intentional tort claims. Lee appealed.
ANALYSIS
¶ 6. On appeal, Lee argues the trial judge erred by (1) denying three mistrial motions and allegedly “refusing to swear the jury panel”; (2) denying his request for a negative inference instruction based on alleged spoliation of evidence; (3) preventing him from introducing the defendants’ answers to interrogatories and an excerpt of Thomas’s deposition; and (4) granting a directed verdict.
I. Motions for Mistrial
¶ 7. Lee made three motions for a mistrial during his case-in-chief. First, Lee claimed the judge made improper and potentially prejudicial statements before the jury. Second, Lee claimed that the trial judge’s alleged failure to swear in the jury required a mistrial. Third, Lee asked for a mistrial because, in his view, he was improperly cross-examined on the absence of a witness. We address each of these briefly in turn.
A. Statements by the Trial Judge
¶ 8. In his first motion for mistrial, Lee claims the judge made improper statements in the presence of the'jury that prejudiced the jury against him. Lee specifically moved for a mistrial after the judge excluded some evidence on the ground that it was “too confusing” and “redundant.” The judge denied the motion. On appeal, Lee also complains, inter alia, that the judge asked him whether he had presented an exhibit to the court reporter for marking and asked opposing counsel whether he had any objection to another exhibit. He also asserts that during his case-in-chief, the judge laughingly asked the jurors if they were asleep or needed coffee.
¶ 9. Lee’s argument lacks merit. None of the judge’s statements prejudiced Lee or required a mistrial. We note that "the judge’s comments to the jurors about falling asleep and needing coffee occurred immediately after a series of lengthy bench conferences in the afternoon on the first day of trial, at which point Lee’s first witness, had only testified for a few minutes. In context, the judge’s comments obviously were a reference to the delay caused by the bench conferences, not Lee’s case.
¶ 10. Moreover, the issue is moot. The case never went to the jury, so we fail to see how the comments’ alleged influence on the jury could require reversal. This issue is wholly without merit.
B. Swearing of the Jury
¶ 11. Lee also argues that a mistrial was required because the trial judge failed to swear in the jury. In support, Lee cites Miller v. State, 122 Miss. 19, 84 So. 161, 161 (1920), which held that a convicted criminal-defendant was “denied his right of a fair trial by a legal jury” because the jury was not sworn in.' We first note that all prospective jurors in Lee’s jury pool were sworn prior to voir dire, although the record does not show the content of the oath — i.e., whether they were sworn to give a true verdict, see Miss. Code Ann. § 13-5-71 (Rev.2012), or only to answer voir dire questions truthfully. Our Supreme Court has held that it is not reversible error to administer the former oath to all prospective jurors rather than after voir dire to only those selected to serve. See Wilburn v. State, 608 So.2d 702, 704-05. (Miss.1992). In any event, we need not pursue the issue further for a far simpler *1134 reason: the issue is moot because the case was decided by the trial judge on a motion for a- directed verdict, not by the allegedly unsworn jurors. Even if we assumed that the jurors did not take a proper oath, we would not reverse just because Lee sat in a courtroom with unsworn jurors for three days. Accordingly, the issue is without merit.
C. Cross-Examination About a Non-Testifying Witness
¶ 12. Lee also moved for a mistrial because Gold Strike cross-examined him about whether he would call a witness to testify on his behalf. The witness, Will Doole, was a coworker of Lee’s who was with him at the bar prior to his argument with Young. When Lee’s attorney objected to this line of questioning, Gold Strike’s attorney responded that the line of inquiry was proper but agreed not to ask any more questions about Doole in order to move along his cross-examination. We are not persuaded that there was anything improper about the questions. See Henderson v. State, 367 So.2d 1366, 1367-68 (Miss.1979) (recognizing that in a civil case, a party’s failure to call a witness “who is presumed to be friendly” may raise a presumption that the witness’s testimony would have been adverse to that party); S. Bell Tel. & Tel. Co. v. Quick, 167 Miss. 438, 149 So. 107, 110 (1933) (same). Moreover, we are certain that the questions were not so unfairly prejudicial as to warrant a mistrial. And, finally, like Lee’s other mistrial arguments, the issue is moot because the court granted a directed verdict, and Gold Strike’s questions and Lee’s answers do not affect our review of the judge’s- ruling on that issue. Accordingly, this argument is without merit.
II. Motion for a Spoliation Instruction
¶ 13. Lee argues that the trial judge erred by denying his motion in li-mine for a spoliation instruction.[2] Lee believes that video of the initial encounter between him and Young once existed and that Gold Strike’s loss or destruction of the video required the judge to instruct the jury that it could infer that the video would have been unfavorable to Gold Strike. Lee believes that the video would have shown Young to have been the aggressor in their initial argument. As with Lee’s motions for a mistrial, the court’s refusal to give a jury instruction is moot because the case never went to the jury. We will, however,- address Lee’s arguments on the merits because such a presumption or inference, if supported by the evidence, could affect our review of the trial judge’s ruling granting a directed verdict.
¶ 14. Gold Strike produced surveillance video of Lee and Young exchanging words in the atrium and the beginning of the assault, which occurred just outside the atrium before moving off camera. The video also shows'the aftermath of the assault, as the casino security officers talked to Lee, asked him to leave, and finally handcuffed him. Gold Strike also produced video of Young’s and Lee’s detention in the casino’s security interview room. These videos were played for the jury and introduced into evidence at trial.
¶ 15. Adrian Thomas testified in his deposition that a video was played at Lee’s justice court hearing. Lee’s attorney in the justice court case — who also represented him in this case — subpoenaed Gold Strike for the video,.and the justice court *1135 record states that video surveillance was in evidence at the sheriffs department. Lee interprets Thomas’s deposition testimony as describing a different video that Gold Strike never produced in discovery in this case. Lee believes that this “missing” tape showed events in or around the Stage Bar.
¶ 16. However, having carefully compared Thomas’s testimony to the videos in evidence, we are unable to reach the same conclusion as Lee. While Thomas’s testimony is ambiguous, it seems to describe the videos that were produced and that are in evidence. In any event, Lee has misinterpreted Thomas’s testimony to at least some degree because Thomas was clear that the video was of him talking to Lee only after Young and Lee were already separated, not the initial dispute between Young and Lee. Moreover, whatever the video depicts, the record indicates that it was turned over to the sheriffs department, not “lost or destroyed.” Thomas, 781 So.2d at 133 (¶ 37). Finally, Gold Strike’s risk manager testified that the casino complied with state law requiring it to maintain surveillance videos for fourteen days[3] and produced all relevant video in its possession when Lee sent them a request to preserve video evidence approximately three months after the incident. Thus, the evidence supports the trial judge’s determination that Gold Strike complied with applicable regulations and its own practices and procedures. For all of these reasons, we conclude that the trial judge did not err by finding that there was no evidence of spoliation and refusing to instruct the jury on the issue. Accordingly, Lee was not entitled to the benefit of a presumption or inference based on spoliation of evidence.
III. Exclusion of Evidence
¶ 17. Lee contends that the trial judge erroneously denied him the use of defendant Thomas’s deposition testimony and the interrogatory responses of the parties. We review a trial judge’s decision to admit or exclude evidence under an abuse of discretion standard. Whitten v. Cox, 799 So.2d 1, 13 (¶ 27) (Miss.2000) (citing Floyd v. City of Crystal Springs, 749 So.2d 110, 113 (¶ 12) (Miss.1999)). We will not reverse based on the admission or exclusion of evidence unless the substantial rights of a party are affected. Floyd, 749 So.2d at 113 (¶ 12).
A. Exclusion of Adrian Thomas’s Deposition
¶ 18. At trial, “[t]he deposition of a party ... may be used by, an adverse party for any purpose.” M.R.C.P. 32(a)(2); see Hartel v. Pruett, 998 So.2d 979, 989 (¶ 24) (Miss.2008); Fred’s Stores of Tenn. Inc. v. Pratt, 67 So.3d 820, 827-28 (¶¶ 41-46) (Miss.Ct.App.2011) (Maxwell, J., concurring in part and in result). Thus, the deposition testimony of an adverse party may not be excluded solely because the witness is available to testify. See Hartel, 998 So.2d at 989 (¶ 24). However, it “may be used” only “so far as [the testimony would be] admissible under the rules of evidence applied as though the witness were then present and testifying,” M.R.C.P. 32(a). The rules of evidence provide that the trial judge “shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth” and “(2) avoid needless consumption of time.” M.R.E. 611(a); see Pratt, 67 So.3d at 826 (¶ 32). The rules also give the trial judge discretion to exclude testimony “if its pro *1136 bative value is substantialy outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of,undue delay,, waste of time, or needless presentation of cumulative evidence.” M.R.E. 403.
¶ 19. At trial, Lee attempted to introduce part of the videotaped deposition of defendant Thomas. He proffered one excerpt-that related to the spoliation argument we have already considered and rejected above. The trial judge excluded the evidence under Rule 403 as more prejudicial ■ than probative and confusing to the jury.[4] See M.R.E. 403. As we have already affirmed the trial judge’s determination that there was no evidence of spoliation in Thomas’s deposition or ptherwise, we also conclude that he committed no abuse of discretion in excluding this excerpt of Thomas’s deposition under Rule 403.
¶ 20.. On appeal, Lee implies that he was prevented from using Thomas’s deposition testimony for other purposes as well, but he identifies no point in the trial at which he articulated or offered the deposition for another purpose. The record reflects only that the trial judge expressed reasonable concerns about redundant testimony because, when the issue was raised, Lee indicated that he might also call Thomas as a live witness. Accordingly, Lee’s argument on appeal is without merit.
B. Exclusion of the Interrogatory Responses
¶ 21. Lee also sought to introduce certain of Thomas’s and Gold Strike’s initial and supplemental interrogatory responses. He later agreed to withdraw his request to introduce the responses as exhibits, but still later he asked to read them into evidence. He argued that the responses were relevant because the defendants’ supplemental responses differed from their initial responses. The trial judge denied the motion, finding that the responses did not “add anything probative” and would be confusing to the jury and duplicative of other evidence. Although Lee is correct that “answers [to interrogatories] may be used [at trial] to the extent permitted by the rules of evidence,” M.R.C.P. 33(c), we cannot find that the trial judge abused his discretion or that Lee suffered any prejudice as a result of the ruling. The defendants’ supplemental responses do not contradict their initial responses but only provide additional information that is not supportive of Lee’s claims.
IY. Grant of a Directed Verdict
¶ 22. We examine the trial court’s grant of a directed verdict de novo. Ducksworth v. Wal-Mart Stores Inc., 832 So.2d 1260, 1262 (¶ 2) (Miss.Ct.App.2002). We consider the evidence presented in the light most favorable to the non-movant, and we give “that party the benefit of all favorable inferences that may be reasonably drawn from the evidence presented at trial.” Id. (quoting Houston v. York, 755 So.2d 495, 499 (¶ 12) (Miss.Ct.App.1999)). “A trial court should submit an issue to the jury only if the evidence creates a question of fact concerning which reasonable jurors could disagree.” Vines v. Windham, 606 So.2d 128, 131 (Miss.1992).
¶ 23. ■ The circuit judge granted- Gold Strike’s motion for a directed verdict after finding that Lee “failed to present evi *1137 dence to prove essential elements of his negligence claim” and his intentional tort claims. Under Rule 50 of the Mississippi Rules of Civil Procedure, a directed verdict motion “enables the court to determine whether there is any question of fact to be submitted to the jury and whether any verdict other than the one directed would be erroneous as a matter of law.” M.R.C.P. 50, Advisory Committee Note. We agree that Lee presented no issue of fact for the jury to determine and that Gold Strike and Thomas were entitled to judgment as a matter of law. Therefore, we affirm.
A. Lee’s Negligence Claims
¶24. On his negligence claim, Lee had the burden of proving (a) that Gold Strike owed him a duty; (b) that Gold Strike breached that duty; (c) damages; and (d) proximate causation. Double Quick, Inc. v. Moore, 73 So.3d 1162, 1166 (¶ 11) (Miss.2011). “Generally, in order to determine the duty- owed by the business owner, the status of the injured party must be determined.” Id. at (¶ 12). Lee contends that his status was that of a business invitee, while Gold Strike claims that he ceased to be an invitee — and was a trespasser — the moment its security personnel told him to leave the - casino. See id. (describing the common law premises liability classifications). We need not address this dispute, however, because even assuming that Lee remained an invitee at the time of his injury, he failed to present evidence sufficient for a reasonable juror to find that Gold Strike breached any duty to him.
¶ 25. “[A] premises owner Owes a duty to exercise reasonable care to protect the invitee from reasonably foreseeable injuries at the hands of another.” Newell v. S. Jitney Jungle Co., 830 So.2d 621, 623 (¶ 6) (Miss.2002). To establish that an assault was reasonably foreseeable, a plaintiff in a premises liability case must show “1) that the defendant had actual or constructive knowledge of the assailant’s violent nature, or 2) actual or constructive knowledge an atmosphere of violence existed on the premises.” Id. at (¶ 7). In this case, there is no suggestion that an “atmosphere of violence existed” at Gold Strike. Therefore, we need only consider whether Lee presented evidence sufficient for a reasonable jury to find that Gold Strike had “actual or constructive knowledge of [Young’s] violent nature.” Id.
¶ 26. On appeal, Lee asserts that “the record is replete with evidence” that the casino had “direct, actual, first hand knowledge of John Mack Young’s violent nature.” We agree with the trial judge that the record is devoid of such evidence. Viewed in a light most favorable to Lee, the evidence establishes the following: Lee asked Young for a cigarette, and Young responded with loud insults and profanity. Lee returned to his own table, but Young’s insults and verbal tirade continued. Lee decided to go back to Young’s table to try to talk to him again in an effort to “squash the whole thing” himself, but he was unable to mollify Young, so he asked casino security officers to intervene. Because the verbal disagreement between the men continued, casino security ultimately asked both of them to leave, and both agreed to do so. Young said that he and his friends would go next door to the Horseshoe Casino. There is’ no evidence that Young had been involved in any prior altercation at the Gold Strike or that the casino had any knowledge of his allegedly “violent nature” other than what its employees witnessed at the bar that evening, which was not'evidence of a violent nature at all. We agree with the trial judge that no reasonable juror could have found that Gold Strike should have foreseen Young’s physical assault solely because Young and Lee ver *1138 bally argued and were asked to leave a bar inside the casino. Accordingly, the judge’s order granting a directed verdict on Lee’s negligence claims is affirmed.
B. Intentional Tort Claims
¶27. The trial judge also granted a directed verdict on all of Lee’s'intentional tort claims, concluding that he failed to present evidence sufficient to create a jury question on his claims of assault and battery, false imprisonment, malicious prosecution, and intentional infliction of ¿mo-tional distress. We address these claims below.
1. Malicious Prosecution
 ¶28. Malicious prosecution torts have six elements: “(1) the institution of a proceeding; (2) by, or at the insistence of the defendant; (3) the termination of such proceedings in the plaintiffs favor; (4) malice in instituting the proceedings; (5) want of probable cause for the proceeding; and (6) the suffering of injury or damage as a result of the prosecution,” Croft v. Grand Casino Tunica, Inc., 910 So.2d 66, 72 (¶ 14) (Miss.Ct.App.2005) (citing Condere Corp. v. Moon, 880 So.2d 1038, 1042 (¶ 13) (Miss.2004)), If any of the six elements is not proven, the claim fails. Id.
 ¶ 29. With respect to the fifth element, “probable cause” requires' an “honest belief in the guilt” of the person accused and “reasonable grounds” for that belief. Id. at 74 (¶ 24) (quoting Page v. Wiggins, 595 So.2d 1291, 1294 (Miss.1992)). Whether probable cause exists depends .on the facts available to the person at the time- the arrest is commenced. Id. at (¶ 25) (citing Van v. Grand Casinos of Miss., Inc., 767 So.2d 1014, 1020 (¶ 14) (Miss.2000)). Because “want of probable cause” is an essential element of the claim, the claim necessarily fails as a matter of law where probable cause existed to initiate criminal proceedings at the time they were initiated. See id.
¶ 30. Gold Strike pressed charges against Lee for disturbing the peace. Mississippi Code Annotated section 97-35-15(1) (Rev.2014) provides:
Any person who disturbs the public peace, or the peace of others, by violent, or loud, or insulting, or profane, or indecent, or offensive, or boisterous conduct or language, or by intimidation, or seeking to intimidate any other person or persons, or by conduct either calculated to provoke a breach of the peace, or by conduct which may lead to a breach of the peace, or by any other act, shall be guilty of a misdemeanor[.]
Although the charge was eventually dropped, there was probable cause for Lee’s arrest at the time it was initiated.. A Mississippi casino — or any private business, for that matter — has a right to refuse to serve a customer and require him to leave for any reason other than an unlawfully discriminatory reason. See Kelly v. Beau Rivage Resorts, Inc., 184 Fed.Appx. 364, 365 (5th Cir.2006); Cashio v. Alpha Coast, 77 F.3d 477 (table), 1995 WL 798572, at *2 (5th Cir.1995); Miss.Code Ann. § 97-23-17 (Rev.2014); see also Higgenbotham v. State, 237 Miss. 841, 846, 116 So.2d 407, 409 (1959) (holding that a property owner “may ... use such force as may be reasonably necessary ... to remove persons, originally on the premises by license or permission, who refuse to leave on request, and are given a reasonable time to do so”). Casino employees asked Lee to leave the premises, and he pointedly refused. Under the circumstances, the employees had probable cause to believe that Young’s conduct “[might] lead to a breach of the peace.” Miss.Code Ann. § 97-35-15(1); see also Jones v. State, 798 So.2d 1241, 1247 (¶ 12) (Miss.2001) (finding that no “breach of the peace” was threatened because, inter alia, *1139 “[n]o one from the convenience store asked that [the defendant] be removed”); Morris v. First Nat'l Bank & Tr. Co. of Ravenna, 21 Ohio St.2d 25, 254 N.E.2d 683, 687 (1970) (finding that one “who unlawfully refuses to depart from the land of another” has “committed a breach of the peace”). Therefore, the trial judge did not err by granting a directed verdict on Lee’s claim of malicious prosecution.
2. Intentional Infliction of Emotional Distress
¶ 31. “The standard for intentional infliction. of emotional distress in Mississippi is very high: a defendant’s conduct must be wanton and wilful and such that it would evoke outrage or revulsion.” Croft, 910 So.2d at 75 (¶ 31) (quoting Hatley v. Hilton Hotels Corp., 308 F.3d 473, 476 (5th Cir.2002)) (quotation marks, brackets omitted). The defendant’s conduct must be “so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.” Id. (quoting Brown v. Inter-City Fed. Bank, 738 So.2d 262, 264 (¶ 9) (Miss.Ct.App.1999)).
¶ 32. Lee argues that Gold Strike “intentionally ... treated [him] as if he’d done something wrong,” including by detaining and arresting him, holding him in the same room as Young, and accusing him of “offering homosexual activity to Young.”[5] As discussed above, Gold Strike had probable cause to initiate Lee’s prosecution. That being the case, no reasonable juror could find that his detention, handcuffing, and arrest were “so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.” Id. (quoting Brown, 738 So.2d at 264 (¶ 9)); see id. at 71-72, 75 (¶¶ 3-9, 32) (“After having found ... that the defendants had probable cause to file charges against [the plaintiff], we fail to find any outrageous, extreme and -utterly intolerable actions on the defendants’ part in - filing criminal charges.”). Therefore, we affirm the grant of a directed verdict as to Lee’s claim for intentional infliction of emotional distress.
3. Assault and Battery
¶ 33. “An assault occurs where a person (1) acts intending to cause a harmful or offensive contact ... or an imminent apprehension of such contact, and (2) the other [person] is thereby put in such imminent apprehension.” Morgan v. Greenwaldt, 786 So.2d 1037, 1043 (¶ 20) (Miss.2001). “A battery goes one step ber yond an assault in that a harmful contact actually occurs.” Id. Lee argues that he was assaulted and battered throughout the night, including when Gold Strike security threatened him with removal and later arrest, when Young attacked him,[6] and when Adrian Thomas handcuffed him..
*1140 ¶ 34. However, Lee failed to present sufficient evidence from which a jury could find that he was assaulted or battered by Gold Strike or Thomas. Lee was threatened only with removal and arrest. As we have already explained, the casino had a right to remove him and probable cause to initiate his arrest, so these “threats” cannot amount to an assault. The battery allegedly committed by Thomas (handcuffing Lee) also stems from the valid arrest. A valid citizen’s arrest as defined in Mississippi Code Annotated section 99-3-7(1) (Rev.2015)[7] shields the person making the arrest from civil liability as a result of the valid arrest. See Miss.Code Ann. § 99-3-23 (Rev.2015); Whitten, 799 So.2d at 8 (¶ 9). Accordingly, the trial judge properly granted a directed verdict on Lee’s assault and battery claim.
4. False Imprisonment
¶ 35. Finally, Lee claims that Gold Strike falsely imprisoned him by detaining, handcuffing, and holding him in a security office until law enforcement arrived. False imprisonment has two elements: (1) the detention of a person and (2) the unlawfulness of that detention. Alpha Gulf Coast, Inc. v. Jackson, 801 So.2d 709, 720 (¶ 28) (Miss.2001) (citing Wallace v. Thornton, 672 So.2d 724, 727 (Miss.1996)). A detention is lawful if, considering the “totality of the circumstances,” the defendant’s actions “were objectively reasonable in their nature, purpose, extent, and duration.” Id. (quoting Wallace, 672 So.2d at 727).
¶ 36. As with a claim of malicious prosecution, a claim of false arrest fails if there was probable cause to make the arrest. Richard v. Supervalu Inc., 974 So.2d 944, 949 (¶¶ 18-19) (Miss.Ct.App.2008); see also City of Mound Bayou v. Johnson, 562 So.2d 1212, 1218 (Miss.1990) (explaining that the torts of false arrest and false imprisonment are closely related). Moreover, there was nothing “objectively unreasonable” about the nature or extent of Lee’s detention. The videos in evidence show that he was placed in handcuffs and taken to the an interview room where he was held for about five minutes until law enforcement arrived and that medical personnel arrived to evaluate his arm about twenty minutes later. Accordingly, the trial judge properly granted a directed verdict on this claim as well.
¶ 37. In summary, the trial judge properly granted a directed verdict on each of Lee’s intentional tort claims because no reasonable jury could have found in his favor on any of them. We therefore affirm the trial judge’s grant of a directed verdict.
CONCLUSION
¶38. Lee failed to present evidence from which a reasonable jury could find that the defendants had actual or constructive knowledge of Young’s alleged “violent nature.” He also failed to present sufficient evidence for a reasonable jury to find in his favor on any of his intentional tort claims because, for each claim, he failed to present evidence sufficient to establish one or more of its essential elements. Accordingly, we affirm the trial judge’s order granting the defendants’ motion for a directed verdict.
¶ 39. THE JUDGMENT OF THE CIRCUIT COURT OF TUNICA COUNTY IS AFFIRMED. ALL COSTS OF *1141 THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON AND FAIR, JJ., CONCUR. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION. GREENLEE, J., NOT PARTICIPATING.

. At the time of the incident at issue in this case, Circus Circus Mississippi Inc. owned the Gold Strike Casino & Resort in Tunica. MGM Resorts Mississippi Inc. subsequently purchased the casino, but it continued to do business under the same name.

. "When evidence is lost or destroyed by one party (the ‘spolitor’), thus hindering the other party's ability to prove his casé, a presumption is raised that the missing evidence would have been unfavorable to the party responsible for its loss.” Thomas v. Isle of Capri Casino, 781 So.2d 125, 133 (¶ 37) (Miss.2001).

. See Miss. Admin. Code § 13-3:6.10(e).

. We note that part — if not all — of this excerpt was played for the jury prior to the judge’s ruling excluding it, and the judge never instructed the jury to disregard what it had heard. However, the video was interrupted and was not transcribed as part of the trial transcript, so the record is unclear as to the precise page and line numbers played for the jury.

. Lee believes that Gold Strike conspired with Young and “possibly” the Tunica County Sheriffs Department to "concoct” a story that the initial argument at the Stage Bar started when Lee sexually propositioned Young, Lee’s claim is based entirely on an unclear statement by Young, during his detention, about an unspecified "sexual comment” and a deputy sheriff's question to Lee about whether he had propositioned Young. There is no evidence from which a jury could find that a conspiracy existed, much less that the casino played a role in it.

. Gold Strike cannot be held liable for the intentional tort of a non-employee third party süch as Young except under a premises liability theory. As discussed above, because Young’s attack on Lee was not foreseeable, Gold Strike cannot be held liable for it. May v. V.F.W. Post No. 2539, 577 So.2d 372, 376 (Miss.1991) (”[A]n owner may be liable for the acts of a third person only when he has *1140 cause the anticipate the wrongful or negligent act.”).

. "An officer or private person may arrest any person without warrant, for ... a breach of the peace threatened or attempted in his presence ...." Miss.Code Ann. § 99-3-7(1) (Rev. 2015).