# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-00119-COA

DERRICK EVANS                                                          APPELLANT

v.

SHUCKER'S PIANO & OYSTER BAR, INC.                        APPELLEES
AND RYAN COBB

DATE OF JUDGMENT:                    12/29/2017
TRIAL JUDGE:                         HON. WILLIAM E. CHAPMAN III
COURT FROM WHICH APPEALED:           RANKIN COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:              CHRISTOPHER JACKSON WELDY
ATTORNEYS FOR APPELLEES:             DONNA MARIE MEEHAN
                                     ANSELM J. McLAURIN
NATURE OF THE CASE:                  CIVIL - PERSONAL INJURY
DISPOSITION:                         AFFIRMED - 04/09/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

EN BANC.

J. WILSON, P.J., FOR THE COURT:

¶1.     Around 2:40 a.m. on January 1, 2012, Derrick Evans and Ryan Cobb got into a fight in the parking lot just outside of Shucker's Oyster and Piano Bar in Ridgeland.  Cobb punched Evans in the face, breaking his nose.  Evans sued Cobb and Shucker's in county court.  The court granted summary judgment in favor of Cobb based on the one-year statute of limitations for assault and battery claims.  The court also granted summary judgment in favor of Shucker's, holding that there was no genuine issue of material fact and that Shucker's was entitled to judgment as a matter of law on Evans's premises liability claim.  The circuit court affirmed both rulings.  We also affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     Around 6 p.m. on December 31, 2011, Derrick Evans and his friends Jennifer and Leah went to Shucker's to ring in the new year. Shortly before midnight, a woman stumbled into Leah, causing Leah to spill her drink. According to Evans, a "little shuffle" ensued, but in "a matter of seconds" security removed the woman from the premises without any further disturbance. As it turns out, the woman was with Ryan Cobb and a group of his friends. Cobb denied that security required the woman to leave the bar. He testified that he and his fiancée called her a cab, and she left voluntarily.

¶3.     Around 2 a.m., it was closing time,[1] time to go out into the world. Shucker's turned the lights up over every boy and every girl. It was time for the few customers still at the bar to finish their whiskey or beer. They didn't have to go home, but they couldn't stay at Shucker's.

¶4.     Evans knew who he wanted to take him home. Jennifer's husband, Fred, was going to pick up Evans, Jennifer, and Leah when he got off of work around 2 a.m. Fred would take them back to the places they were from. So Evans moved it to the exits and found his friends.

¶5.     Evans and his friends walked out to the parking lot, near the entrance to Shucker's, to wait on Fred. Cobb was also outside waiting for his ride, along with his fiancée, his sister, and his brother-in-law. Both parties were still waiting for their rides at 2:40 a.m., about forty minutes after Shucker's had closed. According to Cobb, at some point while they were

---

[1] *See generally* Semisonic, *Closing Time*, *on* Feeling Strangely Fine (MCA 1998).

2

waiting, his fiancée and his sister apologized to Leah about the earlier incident with their friend, and Leah said it was "fine" and "no problem." Cobb testified, however, that after his sister and his fiancée walked back inside to use the restroom, Leah began calling them "whores, Jackson trash, this that and the other." This led to a heated argument between Leah and Cobb and his brother-in-law. According to Cobb, Evans interjected and told him and his brother-in-law to "shut their f*****g mouths."

¶6.     Surveillance video of the parking lot captured what transpired next. Fred arrived to pick up Evans, Jennifer, and Leah. Fred's car stopped a few feet away from the group, but Evans says he did not know that Fred had arrived. Cobb walked over to Evans and kicked the back of Evans's chair. In response, Evans immediately stood up and threw the chair at Cobb, hitting both Cobb and his brother-in-law. In his deposition, Evans claimed that he just "randomly tossed the chair" and "wasn't intending to hit anybody." He said he threw the chair to "let[] them know to leave [him] alone."

¶7.     Leah and Jennifer then attempted to pull Evans to Fred's waiting car, but Cobb and his brother-in-law followed them, and their argument continued. Cobb's brother-in-law grabbed Evans's hat off his head, and Leah attempted to strike Cobb. Suddenly, Cobb punched Evans once in the face, and Evans fell to the ground. The punch was thrown about twenty-four seconds after Cobb first kicked Evans's chair. About ten seconds later, three Shucker's security guards ran out of the bar to break up the fight. Shucker's had four security personnel on duty that evening. All were off-duty law enforcement officers.

¶8.     The police were called to the scene. Evans refused medical attention, and the

3

responding officer observed that "Evans appeared to be heavily intoxicated." In his deposition, Evans did not dispute the officer's assessment. The officer told Evans that if he wanted to press charges, he should make a statement later when he was not intoxicated. The officer gave the same instructions to Cobb, who also appeared to be intoxicated. Evans went to the hospital the next day. He had a broken nose and multiple broken facial bones.

¶9. Evans provided a written statement to police on January 4, 2012. He alleged that Cobb assaulted him without provocation. Cobb was charged with simple assault and pled guilty on July 23, 2013.

¶10. On February 24, 2014, Evans sued Cobb and Shucker's in county court. Evans sued Cobb for assault, battery, and negligence. Evans asserted a negligence/premises liability claim against Shucker's. Following discovery, Cobb and Shucker's filed separate motions for summary judgment, which the court granted. The court held that Cobb was entitled to summary judgment based on the one-year statute of limitations for assault and battery claims. The court held that Shucker's was entitled to judgment as a matter of law based on the undisputed facts material to Evans's premises liability claim. On appeal, the circuit court affirmed, and Evans again appealed.

¶11. Evans argues that summary judgment should not have been granted in favor of either Cobb or Shucker's. However, for the reasons that follow, we affirm.

**ANALYSIS**

¶12. We review an order granting summary judgment de novo. *Pigg v. Express Hotel Partners LLC*, 991 So. 2d 1197, 1199 (¶4) (Miss. 2008). The evidence is viewed in the light

4

most favorable to the non-movant. *Davis v. Hoss*, 869 So. 2d 397, 401 (¶10) (Miss. 2004). But the non-movant "may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there are genuine issues for trial." *Pigg*, 991 So. 2d at 1199 (¶4) (quoting *Massey v. Tingle*, 867 So. 2d 235, 238 (¶6) (Miss. 2004)). In other words, "the non-movant cannot just sit back and remain silent, but he must rebut by producing significant probative evidence showing that there are indeed genuine issues for trial." *McMichael v. Nu-Way Steel & Supply Inc.*, 563 So. 2d 1371, 1375 (Miss. 1990) (quoting *Newell v. Hinton*, 556 So. 2d 1037, 1041 (Miss. 1990)). The movant is entitled to summary judgment if there is no genuine issue of material fact. *Glover ex rel. Glover v. Jackson State Univ.*, 968 So. 2d 1267, 1275 (¶22) (Miss. 2007). Indeed, "the court *must* grant summary judgment unless . . . the record demonstrates the minimum quantum of evidence sufficient to justify a determination in favor of the [non-movant] by a reasonable juror." *Id.* at 1274 (¶19) (footnotes omitted).

¶13.    "The presence of fact issues in the record does not per se entitle a party to avoid summary judgment. The court must be convinced that the factual issue is a material one, one that matters in an outcome determinative sense." *Simmons v. Thompson Mach. of Miss., Inc.*, 631 So. 2d 798, 801 (Miss. 1994) (emphasis omitted) (quoting *Shaw v. Burchfield*, 481 So. 2d 247, 252 (Miss. 1985)). "The existence of a hundred contested issues of fact will not thwart summary judgment where there is no genuine dispute regarding the material issues of fact." *Sanders v. Advanced Neuromodulation Sys. Inc.*, 44 So. 3d 960, 965 (¶11) (Miss. 2010) (quoting *Moss v. Batesville Casket Co.*, 935 So. 2d 393, 399 (¶17) (Miss. 2006));

*accord, e.g.*, *Glover*, 968 So. 2d 1267, 1274 n.5; *Summers ex rel. Dawson v. St. Andrew's Episcopal Sch. Inc.*, 759 So. 2d 1203, 1208 (¶12) (Miss. 2000).

## I.  Cobb

¶14.  Evans waited more than two years before he sued Cobb.  Therefore, the circuit court properly granted summary judgment in favor of Cobb based on the one-year statute of limitations for assault and battery claims.  *See* Miss. Code Ann. § 15-1-35 (Rev. 2012).

¶15.  Evans argues that he has a viable "negligence" claim against Cobb that is not time-barred.  Evans relies on Cobb's deposition testimony that he "felt bad for what happened" and "didn't mean to do any harm to [Evans]."  However, both Cobb and Evans testified that Cobb intentionally punched Evans in the face.  Evans testified as follows:

> Q.  Did Ryan Cobb intentionally hit you?
> A.  Absolutely.
> Q.  There's no doubt in your mind that he didn't accidentally fall into you?
> A.  No.  He was after me.

Evans also signed a misdemeanor affidavit charging that Cobb "purposefully, knowingly, and unlawfully cause[d] or attempt[ed] to cause bodily injury to [him] by striking [him] with [a] closed fist in the face."  Likewise, Cobb testified that although he "felt bad" about it, he absolutely "meant to hit" Evans and hit Evans "on purpose."  As noted above, Cobb pled guilty to simple assault.

¶16.  Mississippi law does not recognize claims for "negligent assault." *Sanderson Farms, Inc. v. McCullough*, 212 So. 3d 69, 80 (¶30) (Miss. 2017); *accord Estate of Puckett v. Clement*, 238 So. 3d 1139, 1146 (¶17) (Miss. 2018) ("an intentional tort cannot be committed negligently").  Therefore, a plaintiff cannot avoid the one-year statute of limitations

6

applicable to assault and battery claims by restyling an intentional assault as "negligence." *Estate of Puckett*, 238 So. 3d at 1146 (¶¶17-18); *McCullough*, 212 So. 3d at 75 (¶14). In *McCullough*, the Supreme Court held that the plaintiff's claim that the defendant purposefully struck him with a truck during an argument "described an intentional act" of assault and battery, not mere negligence. *McCullough*, 212 So. 3d at 74-80 (¶¶13-29). Similarly, in *Estate of Puckett*, the Supreme Court held that the plaintiff's allegations that the defendant "intentionally fired [a] shotgun at [the plaintiff]" described an assault, not negligence. *Estate of Puckett*, 238 So. 3d at 1145-46 (¶¶15-21).

¶17. The same is true in this case. In sworn deposition testimony and in a sworn affidavit, Evans charged that Cobb intentionally struck him in the face. Cobb said exactly the same in his deposition testimony and pled guilty to simple assault. The one-year statute of limitations applies. Therefore, the lower courts correctly concluded that there is no genuine issue of material fact and that Evans's claim against Cobb is time-barred.

## II. Shucker's

¶18. Evans alleges that Shucker's negligently failed to prevent Cobb's assault. On his negligence claim against Shucker's Evans had the burden of proving (a) that Shucker's owed him a duty; (b) that Shucker's breached that duty; (c) damages; and (d) proximate causation. *Lee v. MGM Resorts Miss. Inc.*, 200 So. 3d 1129, 1137 (¶24) (Miss. Ct. App. 2016) (citing *Double Quick Inc. v. Moore*, 73 So. 3d 1162, 1166 (¶11) (Miss. 2011)), *cert. denied*, 203 So. 3d 598 (Miss. 2016).

¶19. "Generally, in order to determine the duty owed by the business owner, the status of

7

the injured party must be determined." *Moore*, 73 So. 3d at 1166 (¶12). "The injured party should be classified as an invitee, licensee, or trespasser." *Id.* "[A]n *invitee* is a person who goes upon the premises of another in answer to the express or implied invitation of the owner or occupant for their mutual advantage." *Leffler v. Sharp*, 891 So. 2d 152, 156 (¶11) (Miss. 2004) (quoting *Corley v. Evans*, 835 So. 2d 30, 37 (¶21) (Miss. 2003)). "A *licensee* is one who enters upon the property of another for his own convenience, pleasure, or benefit pursuant to the license or implied permission of the owner . . . ." *Id.* "[A] *trespasser* is one who enters upon another's premises without license, invitation, or other right." *Id.* "If the circumstances surrounding a person's . . . presence upon property are in dispute, then the determination of which status a particular plaintiff holds can be a jury question." *Payne v. Rain Forest Nurseries Inc.*, 540 So. 2d 35, 37 (Miss. 1989) (quotation marks omitted).

¶20.    There is no dispute that Evans was an invitee from the time he arrived at Shucker's until the bar closed. Evans argues that he was still an invitee when he was injured in the parking lot, some forty minutes after closing time. In contrast, Shucker's argues that Evans became a licensee after Shucker's closed. Shucker's further argues that Evans became a trespasser when he continued to argue with Cobb rather than getting into Fred's waiting car. We conclude that it is unnecessary to address this issue because even assuming that Evans remained an invitee at all times, he failed to present evidence sufficient for a reasonable juror to find that Shucker's breached any duty owed to him. *See Lee*, 200 So. 3d at 1137 (¶24).

¶21.    Our Supreme Court has held that "a premises owner owes a duty to exercise reasonable care to protect the invitee from reasonably foreseeable injuries at the hands of

8

another." *Newell v. S. Jitney Jungle Co.*, 830 So. 2d 621, 623 (¶6) (Miss. 2002). "To establish that an assault was reasonably foreseeable, a plaintiff in a premises liability case must show '1) that the defendant had actual or constructive knowledge of the assailant's violent nature, or 2) actual or constructive knowledge an atmosphere of violence existed on the premises.'" *Lee*, 200 So. 3d at 1137 (¶25) (quoting *Newell*, 830 So. 2d at 623 (¶7)). Here, there is no evidence that Shucker's knew or should have known that Cobb was a violent person. Therefore, we need only address whether there was evidence from which a reasonable juror could find that Shucker's failed to exercise reasonable care to protect customers from a general atmosphere of violence.

¶22. On appeal, the parties disagree as to whether there is any competent evidence that an "atmosphere of violence" existed at Shucker's. In opposition to summary judgment, Evans submitted an unauthenticated document entitled, "Calls for Service - 116 Conestoga Road." The document purports to show a total of 473 "calls for service" over a nearly ten-year period (2005 to 2014) to the Ridgeland Police Department related to Shucker's address. However, many of the categories of calls listed on the document have nothing to do with violence or even criminal activity. The document reflects a total of only eighteen calls in ten years related to *possible* assaults, including none in 2011. Evans presented no further detail or evidence related to these "calls for service."

¶23. Our Supreme Court has explained that reliance on data about mere "calls for service" is problematic because there is nothing to "verify the accuracy of the calls." *Kroger Co. v. Knox*, 98 So. 3d 441, 444 (¶18) (Miss. 2012). "'[P]olice incident reports' are prepared by

9

the responding officers when they confirm that a crime has occurred. Here, we do not have them." *Id.* (footnote omitted). We agree with the county court that the alleged calls for service in this case are insufficient to establish an atmosphere of violence.

¶24. Moreover, even if an "atmosphere of violence" exists, that simply means that the business owner has a duty to provide reasonable security for its customers. *See id.* at 445 (¶23) ("Because Kroger was not on notice of an atmosphere of violence on its premises, it had no duty to place an armed security guard in its parking lot."); *accord, e.g.*, *Wright v. R.M. Smith Investments L.P.*, 210 So. 3d 555 (Miss. Ct. App. 2016). Shucker's manager, Tony Terranova, acknowledged that he had witnessed about ten fights during his fifteen years at Shucker's. And Shucker's *did* provide security for its customers. On the night in question, Shucker's employed four security guards, all off-duty law enforcement officers. The altercation between Evans and Cobb began with Cobb kicking Evans's chair and was over within twenty-four seconds. The surveillance video shows that at least three security guards arrived to break up the fight about ten seconds after Cobb struck Evans.

¶25. As our Supreme Court has recognized, it is "impossible for a business . . . to guarantee the safety of everyone coming onto its premises." *Fenelon v. Jackson Metrocenter Mall Ltd.*, 172 So. 3d 760, 764 (¶13) (Miss. Ct. App. 2013) (quoting *Crain v. Cleveland Lodge 1532, Order of Moose Inc.*, 641 So. 2d 1186, 1189, 1192 (Miss. 1994)). Therefore, we will not "place upon a business a burden approaching strict liability for all injuries occurring on its premises as a result of criminal acts by third parties." *Id.* at 763-64 (¶13) (quoting *Crain*, 641 So. 2d at 1191). A business has "a duty to exercise *reasonable* care to protect [an] invitee

10

from reasonably foreseeable injuries at the hands of another." *Newell*, 830 So. 2d at 623 (¶6) (emphasis added). In this case, even if we assume that Evans was still an invitee when he was injured, there is no evidence from which any reasonable juror could conclude that Shucker's breached any duty to Evans. Shucker's had four off-duty law enforcement officers on duty. Shucker's cannot guarantee a customer's safety from every sudden altercation.[2]

## CONCLUSION

¶26. The undisputed material facts show that Evans's claim against Cobb is barred by the statute of limitations and that Shucker's did not breach any duty to Evans. Therefore, the county court properly granted summary judgment in favor of both Cobb and Shucker's.

¶27. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., WESTBROOKS, TINDELL, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR. GREENLEE AND McDONALD, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**

---

[2] Evans also argues that the county court erred by disregarding the affidavit of Sean Goforth, the head of security at Shucker's on the night in question. Goforth's affidavit stated that Shucker's did not close until 3 a.m. that night. The county court found this assertion "not credible" because Evans himself, Cobb, and Terranova all testified that the bar closed at 2 a.m. This point is not material since we have assumed, for purposes of this appeal, that Evans remained an invitee at all times. Nothing else in the Goforth affidavit affects our conclusion that Shucker's was entitled to judgment as a matter of law. Finally, Evans argues that the county court erred by holding that the security guards at Shucker's were independent contracts rather than employees. This issue is immaterial, since Shucker's was entitled to summary judgment even assuming the guards were its employees.