# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CP-00633-COA

**DACARVOS GOODE**                                                                 **APPELLANT**

**v.**

**WALMART, INC. AND WILLIE SIMS**                                          **APPELLEES**

DATE OF JUDGMENT:                   06/07/2022
TRIAL JUDGE:                              HON. CLAIBORNE McDONALD
COURT FROM WHICH APPEALED:    LAMAR COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:         DACARVOS GOODE (PRO SE)
ATTORNEYS FOR APPELLEES:        WILBUR PEMBLE DELASHMET
                                              MIGNON MESTAYER DELASHMET
NATURE OF THE CASE:                  CIVIL - PERSONAL INJURY
DISPOSITION:                             AFFIRMED - 10/03/2023
MOTION FOR REHEARING FILED:

**BEFORE CARLTON, P.J., McCARTY AND SMITH, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1.     While shopping at a Hattiesburg, Mississippi Wal-Mart, Dacarvos Goode was stopped by Willie Sims, a Wal-Mart asset protection associate, for shoplifting four hooded sweatshirts (hoodies). Goode left Wal-Mart before the police arrived. Sims did not know Goode's identity.

¶2.     Within a week of the incident, Goode filed criminal charges against Sims for simple assault. After ascertaining Goode's identity and investigating the matter, Wal-Mart filed criminal shoplifting charges against Goode and discovered at this time that Goode had filed the criminal assault charges against Sims. In December 2019, the assault charges against Sims were dismissed by the Hattiesburg, Mississippi Municipal Court for lack of probable

cause. In September 2020, the municipal court found Goode guilty of shoplifting. Goode appealed for a trial de novo. The State nolle prosequied the shoplifting case after Goode appealed.

¶3. While the criminal shoplifting appeal was pending, Goode filed a civil complaint against Wal-Mart and Sims (collectively referred to at times as Wal-Mart) in the Lamar County Circuit Court, alleging assault (Claim I), intentional or negligent infliction of emotional distress (Claim II), abuse of process (Claim III), and negligence (Claim IV).

¶4. After discovery, including the depositions of Sims and Goode, Wal-Mart moved for summary judgment on all four claims. The circuit court granted summary judgment in Wal-Mart's favor and dismissed Goode's lawsuit against Wal-Mart and Sims. Goode appeals, asserting that summary judgment was granted in error because genuine issues of material fact exist with respect to each of his four claims.[1] Finding no error, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶5. On October 19, 2019, Sims stopped Goode for shoplifting at the Hattiesburg Highway 98 Wal-Mart. Sims stated in his deposition that he watched Goode "switch tags" by placing a $1.00 peel-and-stick price tag on a $9.96 hoodie, selecting four such hoodies, and then scanning the single hoodie with the incorrect price tag four separate times at a self-checkout

---

[1] Goode asserts several arguments within his "Statement of the Issues" that we address in context.

2

register.  Goode ultimately paid $1.00 per hoodie.  The correct price was $9.96 per hoodie.[2]

Goode denies that this occurred.

¶6.    After Goode walked past the checkout registers, Sims stopped him near the store entrance at the customer host podium.  Sims and Goode then went to the nearby customer service desk where the hoodies were re-scanned.  The hoodies rang up as boys' "polo" shirts (which they were not) for $1.00 each, as opposed to "sweatshirts" (which they were) for $9.96 each.  Goode said in his deposition that during this time, Sims called him a "f'g thief" and said that he was "going to jail."  Additionally, according to Goode, as he was walking out of the store, Sims "was . . . kind of jumping back and forth in front of me . . . try[ing] to stop me, like a little bit before going out the door, he [(Sims)] put his forearm into my neck."  Goode said he was walking forward at the time, and Sims was "moving backwards."

¶7.    Sims said that he told Goode that the police were on the way, but Goode exited the store before they arrived.  When the police got there, Sims was unable to tell them Goode's name because Goode had not identified himself.  Sims later learned Goode's name, and Wal-Mart filed criminal shoplifting charges against Goode on November 4, 2019, after Sims's supervisor investigated the shoplifting, reviewed the file, and approved the charges.

¶8.    In the meantime, less than a week after the incident, Goode had filed simple assault charges against Sims.  When Sims arrived at the police station on November 4 to file the

---

[2] The record also contains a copy of a photograph of the correct price tag for $9.96 attached to the hoodies and a copy of a photograph of Goode scanning the incorrect $1.00 price tag on one of the hoodies.

shoplifting charges against Goode, he first learned about the assault charges Goode filed against him. The municipal court dismissed Goode's assault complaint against Sims for lack of probable cause on December 20, 2019.

¶9. The municipal court shoplifting hearing was held on September 8, 2020. Goode appeared at the hearing represented by counsel. After a hearing on the merits, Goode was found guilty of shoplifting. Goode appealed his guilty verdict for a trial de novo in county court. Sims was at the appeal hearing prepared to testify about the October 19, 2019 incident. He was not called to testify, however, because the State announced to the county court that the charges would be nolle prosequied. An "Agreed Order to Nolle Prosse" was entered by the County Court of Lamar County on December 7, 2021.

¶10. While Goode's shoplifting appeal was pending, he filed his civil lawsuit against Wal-Mart and Sims in the Lamar County Circuit Court, alleging counts of assault, intentional or negligent infliction of emotional distress, abuse of process, and negligence. Goode alleged that Sims "falsely accused" him of shoplifting at the Hattiesburg Highway 98 Wal-Mart, struck him in the neck, and did not follow "required [Wal-Mart] protocol" during the incident. Goode also alleged that because Wal-Mart did not file shoplifting charges against him until after Goode filed the assault charges against Sims, the charges "constituted retaliation."

¶11. After discovery, Wal-Mart moved for summary judgment on all four claims. The circuit court conducted a hearing on the matter and granted summary judgment in Wal-Mart's

4

favor. Goode appeals.

## STANDARD OF REVIEW

¶12. "An appeal from summary judgment is reviewed de novo, and we view the evidence in the light most favorable to the non-moving party." *Boyanton v. Bros. Produce Inc.*, 312 So. 3d 363, 372 (¶26) (Miss. Ct. App. 2020). "The judgment sought shall be rendered . . . if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). In response to a properly supported motion for summary judgment, the adverse party "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." M.R.C.P. 56(e). "Therefore, to survive summary judgment, the party opposing the motion must 'rebut by producing *significant probative evidence* showing that there are indeed genuine issues for trial.'" *Borne v. Dunlop Tire Corp.*, 12 So. 3d 565, 570 (¶16) (Miss. Ct. App. 2009) (emphasis added) (quoting *Price v. Purdue Pharma Co.*, 920 So. 2d 479, 485 (¶16) (Miss. 2006)). "The non-moving party's claim must be supported by more than a mere scintilla of colorable evidence; it must be evidence upon which a fair-minded jury could return a favorable verdict." *Wilbourn v. Stennett, Wilkinson & Ward*, 687 So. 2d 1205, 1214 (Miss. 1996).

## DISCUSSION

5

## I.     Qualified Immunity

¶13.   Wal-Mart asserts that it has no liability in this matter pursuant to the qualified immunity delineated in Mississippi Code Annotated section 97-23-95 (Rev. 2020).  Although the circuit court did not discuss this argument in granting summary judgment in Wal-Mart's favor, we "may affirm the lower court's grant of summary judgment on grounds other than that which the [circuit] court used."  *Kirksey v. Dye*, 564 So. 2d 1333, 1336 (Miss. 1990).  For the reasons addressed below, we find that Wal-Mart is immune from liability pursuant to section 97-23-95.

¶14.   Section 97-23-95, sometimes referred to as the "shopkeeper's privilege," provides, in relevant part:

> If any person shall commit or attempt to commit the offense of shoplifting, . . . the merchant or any employee thereof, . . . acting in good faith and upon probable cause based upon reasonable grounds therefor, may question such person in a reasonable manner for the purpose of ascertaining whether or not such person is guilty of shoplifting . . . .  Such questioning . . . shall not render such merchant, [or] merchant's employee . . . civilly liable for slander, false arrest, false imprisonment, malicious prosecution, unlawful detention or otherwise in any case where such merchant, [or] merchant's employee . . . acts in good faith and upon reasonable grounds to believe that the person questioned is committing or attempting to commit the crime of shoplifting.

¶15.   The test a merchant must meet "to claim the qualified immunity afforded under section 97-23-95" has been summarized by the Mississippi Supreme Court, as follows: "First, there must be proof of a good faith basis and probable cause based upon reasonable grounds to detain and question the customer.  Second, there must be proof that the detention and questioning of the customer was done in a reasonable manner."  *Turner v. Hudson*

6

*Salvage Inc.*, 709 So. 2d 425, 428 (¶14) (Miss. 1998).  The supreme court further explained that "[t]o claim the privilege, both elements must be present.  The burden of proof rests upon the party asserting the privilege to show that probable cause existed to detain and question the suspected shoplifter." *Id.* at (¶15).  As further guidance, the supreme court stated, "[T]he qualified privilege does not give a store owner or its employees the right to embarrass or harass a suspect in public view of others in a rude manner." *Id.*

### A.    Probable Cause

¶16.    "'[P]robable cause' requires an 'honest belief in the guilt' of the person accused and 'reasonable grounds' for that belief. *Lee v. MGM Resorts Miss. Inc.*, 200 So. 3d 1129, 1138 (¶29) (Miss. Ct. App. 2016) (quoting *Croft v. Grand Casino Tunica Inc.*, 910 So. 2d 66, 74 (¶24) (Miss. Ct. App. 2005)).  In this regard, "[w]hether probable cause exists depends on the facts available to the person at the time the arrest is commenced." *Id.*; *see Croft*, 910 So. 2d at 74 (¶25) (observing that "probable cause is determined from the facts apparent to the reasonable person at the time the prosecution is initiated").

¶17.    Based upon our de novo review of the record, we find that there was sufficient evidence that Sims had probable cause to approach and question Goode and call the police.  Sims said in his deposition that he first observed Goode in the menswear department and watched him the entire time he was in the store, including at the checkout register.  Another asset protection associate was also watching Goode on the floor, and a third asset protection associate, Charles Box, also observed Goode.  Sims saw Goode select four hoodies and then

7

"switch tags" by placing a $1.00 price tag belonging to different merchandise on the front of one of the hoodies. Box also observed this taking place. Sims then watched Goode go to the front of the store and scan the incorrect price tag on that hoodie four separate times, thus purchasing the four hoodies for $1.00 each as opposed to the correct price of $9.96 per hoodie. The record also contains a copy of Goode's October 19, 2019 receipt that shows he paid $1.00 per hoodie instead of the correct price of $9.96 per hoodie; a photograph of store signage showing the $9.96 price of the hoodies on October 19, 2019; a photograph of the incorrect peel-and-stick "$1.00" price tag on one of the hoodies Goode purchased; and a photograph of the correct $9.96 price tag on another hoodie that Goode did not scan.

¶18.    Goode denies that he shoplifted the hoodies, but that is not relevant in the probable cause analysis. Rather, as set forth above, the test is whether Sims had an "honest belief in [Goode's] guilt" and "reasonable grounds for that belief." *Lee*, 200 So. 3d at 1138 (¶29). We find that Sims, who witnessed Goode shoplifting, acted in good faith with probable cause to question Goode. We therefore find that Wal-Mart has satisfied the first element required to obtain immunity pursuant to section 97-23-95.

### B.    Reasonable Detention and Questioning

¶19.    Wal-Mart must also satisfy the second element necessary to establish immunity under section 97-23-95—namely, that Goode's detention and questioning were done in a reasonable manner. As an initial matter, Goode admitted in his deposition that he was not detained. Sims likewise said that although he told Goode that he had called the police, Goode left the

8

store before the police arrived. This is also shown on the surveillance video of the store exit.

¶20.     Goode asserts, however, that a genuine issue of material fact exists whether Sims's actions were unreasonable. The record reflects that after having observed Goode in the store and then go through self-checkout, Sims stopped Goode at the customer host podium. According to Goode, at this point, Sims had the customer host re-scan the hoodies, and when they rang up correctly, Sims said, "No, that's not right. He stole something."[3] Sims then took the bag containing the hoodies and said to Goode, "Come to customer service." Goode said that he thought he should have been taken to a back room "[b]ecause I've seen people in [Wal-Mart] before being apprehended, and they take them to a back room." Goode was brought to the customer service desk, rather than in the interview room at the back of the store, which is the store's general policy. Sims said that this was done because Goode did not want to go to the back of the store.[4]

---

[3] Goode said another Wal-Mart employee came up to them about this time (who Goode later identified as Joey) and asked him questions like "why do you need the hoodies and things like that." Joey did not accompany Goode and Sims to customer service.

[4] According to Sims, the encounter was as follows:

Q.     Okay. And then did you proceed to go to customer service?

A.     I proceeded—I tried to escort Mr. Goode to the back, but he didn't want to do that.

Q.     It's your testimony that he didn't want to go to the back?

A.     Absolutely.

Q.     Okay. Then what was the purpose of going to the customer service?

9

¶21.    Goode said that "other people [were] standing around" in the course of his encounter with Sims, and, according to Goode, on the way from the customer host podium to customer service, Sims called him a "f'g thief" and told him that he (Goode) was "going to jail."  At the customer service desk, Sims had the customer service associate re-scan the hoodies. During this time, Goode said he "was standing kind of back," and "it was just a standstill of me and him [(Sims)] communicating."  Based upon our review of the record, this is the extent of any description by Goode or Sims of the "questioning" that took place between them.

¶22.    Wal-Mart surveillance video also depicts Goode's encounter with Sims during this time.[5]  We have reviewed this video, and—like the circuit court judge—we find nothing indicating any unreasonable behavior on Sims's part or that the few customers present even noticed any interaction between Goode and Sims.

¶23.    In particular, video clip C-1 is an overhead camera recording of the customer host podium where Goode and Sims had their first encounter.  Goode (in a blue shirt) is shown walking over to the podium with Sims nearby.  Goode is shown removing the hoodies from

> A.    He offered to go to customer service because he wanted to return one of those hoodies. So I complied. I was killing time, waiting for the police officer to get there.
>
> Q.    Had you called the police officer?
>
> A.    Yes.

[5] The continued interaction between Sims and Goode when Goode was leaving the store is addressed later in this opinion.

his shopping bag, showing the host his receipt, the host scanning the items, and Sims assisting with the process. Goode and Sims then walk away from the area. This encounter lasted for less than five minutes. There are no customers congregating in the area, no crowd of onlookers, and, upon review, the customers entering and exiting the store pay no attention to Goode as his items are scanned at the podium. In the video, Goode and Sims both appear calm. We find no indication that at any point does Sims shout at Goode or conduct himself in a way that would embarrass Goode or call any attention to the situation.

¶24. Similarly, video clip C-2 shows Goode walking up to the customer service desk with Sims and the two of them waiting in line until a register is free. About two minutes later, Goode and Sims step up to the customer service desk. The video shows their demeanors as the hoodies are scanned by the customer service associate. Goode appears relaxed, and at times he casually leans on the service desk. Sims also appears to be relaxed, at times lightly swinging a bag in his hand. We find no display of aggression by either Goode or Sims. Goode and Sims then exit the customer service area. This encounter between Goode and Sims lasted approximately four minutes.[6] We acknowledge that the store policy is to take a shoplifting suspect to a back interview room for questioning, but any "questioning" here was brief. Indeed, at the customer service area, Goode said the hoodies were re-scanned while he "stood kind of back," and no communication took place between him and Sims.

---

[6] Our review of video clips C-3 and C-4 likewise does not indicate any form of unreasonable behavior on Sims's part. We discuss these video clips later in this opinion.

¶25. As the surveillance video shows, no one in the customer service area appears to pay any attention to the encounter between Goode and Sims. Sims was not dressed in a police or security uniform and appeared to be an ordinary shopper. Goode was not handcuffed, and as he admitted, he was never detained and was free to leave at any time.

¶26. In light of the surveillance video, in particular, there is insufficient evidence to raise a genuine issue of material fact as to the reasonableness of Sims's actions when approaching and questioning Goode. Even if Sims used rude language in requiring Goode to proceed to customer service, there is no evidence that he did so in a loud voice that called any attention to the situation. The video shows that the interaction between Goode and Sims was brief and appeared to be without drama. There were no crowds, and of the few customers present, no one paid attention to Goode or Sims over the course of their approximately nine-minute encounter. Thus, as stated, we find that Goode was questioned and treated in a reasonable manner. *See Poole v. City of Prentiss, Miss.*, No. 2:07cv74-KS-MTP, 2008 WL 3874570, at *3 (S.D. Miss. Aug. 14, 2008) (finding that the store employees' actions were reasonable and in good faith in the shopkeeper privilege context where store manager called to plaintiffs as they were leaving the store, "Is y'all stealing this hair [weave]?" and briefly detained and questioned plaintiffs before the police arrived); *cf. Scott v. Spencer Gifts LLC*, No. 1:14-CV-00037-SA-DAS, 2015 WL 4205242, at *3 (N.D. Miss. July 10, 2015) (finding that a store associate's continued "persistence in questioning [p]laintiffs even when faced with evidence contradicting her suspicion of shoplifting," coupled with associate's "allegedly

12

forceful tone" and allegedly "screaming [accusations against plaintiffs] while in the crowded store," raised "a genuine factual dispute" whether plaintiffs' questioning was "conducted in a reasonable manner"); *Hobson v. Dolgencorp LLC*, 142 F. Supp. 3d 487, 491 (S.D. Miss. 2015) (finding jury question existed on whether store employee exceeded the shopkeeper privilege where employee "yelled . . . 'stop her'" and accused plaintiff of "putting merchandise in her bag," and even after plaintiff was exonerated, plaintiff was "escorted out of the store and told not to return . . . in full view of customers who, according to [plaintiff] were looking at her"); *Sw. Drug Stores of Miss. Inc. v. Garner*, 195 So. 2d 837, 839 (Miss. 1967) (finding jury question existed where store manager allegedly accused plaintiff of stealing a bar of soap "in a rude and loud manner" in front of nearby customers).

¶27. For the foregoing reasons, we find no genuine dispute that Wal-Mart acted in good faith with probable cause in stopping Goode and questioning him and that this was done in a reasonable manner. Accordingly, we find that Wal-Mart is immune from liability pursuant to the shopkeeper's privilege in section 97-23-95.

¶28. Further, even if we did not find that the shopkeeper's privilege applied in this case, we find that Goode's four claims against Wal-Mart and Sims fail as a matter of law for the reasons discussed below.

## II.  Assault

¶29. Goode asserts that "Sims physically assaulted him by making contact with . . . his [(Goode's)] neck with his forearm" as Goode was walking away from the customer service

13

area.[7]  Sims denied that he did so.  The record contains store surveillance video clips concerning the incident.  Goode asserts that these video clips only "partially depict[] the incident" and that by relying on them, the circuit court erred in concluding "that no triable issue existed" with respect to Goode's assault claim.  We find Goode's assertions unpersuasive.

¶30.    In *Scott v. Harris*, 550 U.S. 372 (2007), the United States Supreme Court held that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* at 380.  The Mississippi Supreme Court adopted this summary judgment standard as it applies to videotape evidence in *Duckworth v. Warren*, 10 So. 3d 433 (Miss. 2009).  There, the supreme court concluded that "*Scott* thus informs our courts that where the record contains a videotape of disputed facts capturing the events in question, *the courts should view the story as depicted by the videotape, when one party's version is blatantly contradicted*, for the purpose of ruling on a summary judgment motion." *Id.* at 438 (¶12) (citing *Scott*, 550 U.S. at 380-81) (emphasis added); *accord Thomas v. Boyd Biloxi LLC*, 360 So. 3d 204, 211 (¶25) (Miss. 2023).  We therefore apply this standard in our de novo review of the record,

---

[7] "An assault occurs where a person (1) acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such contact, and (2) the other is thereby put in such imminent apprehension." *Morgan v. Greenwaldt*, 786 So. 2d 1037, 1043 (¶20) (Miss. 2001).

14

including, in particular, Goode's detailed deposition testimony regarding the incident as compared to the store surveillance video clips.

¶31.    In describing the incident, Goode said "he proceeded to walk off" from the customer service area, and Sims was "kind of jumping back and forth in front of me."  As Goode described:

Q.    . . . . You say that Willie [Sims] was jumping in front of you.  Describe that for me, if you could, please.

A.    Pretty much trying just avoid me going out the door, trying to stop me in my tracks. I don't know if he was trying to get me to run into him or whatever his situation was, whatever Willie's rhyme or reason was of trying to get—I don't know if he was trying to do his job or whatever, but he was like kind of going back in front of me.  As I walked forward, he would move back, things like that.

Q.    Was he walking backwards?

A.    Yes, at one point he was.

Q.    And then you say that he physically assaulted you?

A.    Correct.

Q.    Describe for me what happened.

A.    Like I said, as I was going out the door when he did try to stop me, like a little bit before going out the door, he put his forearm into my neck.

Q.    Describe for me what you mean by he put his forearm into your neck.

A.    He put his—this part of his arm into my neck and stopped me, I guess to try to make it seem like I ran into him. But he shoved it forward. And I had, like I said, I just had surgery, so . . .

Q.    Which forearm did he put into your neck?

15

A.     Like I said, I don't even remember.

Q.     You don't know whether it was the right arm or the left arm?

A.     No, I do not.  I just know it was his arm in my neck.  And like I said, I just went blank then because I was really already kind of out of it because of the verbal assault, like him saying all this stuff, accusations and stuff.  And I'm like I can't believe the situation this has evolved into.  So I'm just trying to get out the door to my car because I'm like what is going on.

Q.     How many times did he put his forearm into your neck?

A.     Just once.

Q.     Were you walking at the time that this happened?

A.     Yes, I was.

Q.     Was he moving backwards or forward at the time that this happened?

A.     He was moving backwards.

Q.     When he put [his] forearm into your neck, what happened physically to you?

A.     Well, when he put his forearm in my neck, I had jumped back because it hit me esoph—like this part of my neck. So I kind of slammed back, kind of abruptly stopped.

Q.     When you say this part of your neck, can you describe it for us so that we can know later on—

A.     The front—the front part of my neck.  His arm was in the front part of my neck.  And I abruptly stopped, and that's when I—I was about to fight him. I'm not going to lie.  I was about to fight him.  But I just kind of swiveled my way around him and just like trying to get to my vehicle.  I didn't—no contact from me.

¶32.   Three of the video clips in the record concern Goode's assault allegations.  In video

16

clip C-2, Goode and Sims are shown at the customer service desk from 4:20:53 until they exit that area about six minutes later. Video clip C-3 is an overhead camera recording that shows Goode and Sims walking from the customer service area toward the store exit. At 4:26:45, Goode and Sims are shown walking side by side. A few seconds later, Sims steps in front of Goode and starts walking backward. Sims's arms are shown on video; he does not raise his left arm at all, and his right arm is at his waist. Sims does not make contact with Goode. At 4:26:53, Goode steps around Sims toward the exit door, and he crosses the threshold to the store at 4:26:56. Video clip C-4 shows Goode walking through the vestibule and exiting the store at 4:27.

¶33.   In his appellant's brief, Goode asserts that the alleged assault "occurred when he walked away from the store's exit." He cites the same pages of his deposition as those quoted above in support of this assertion. Goode also asserts that the record contains only a "partial video" that "does not show the complete incident." But in his deposition, Goode described, in detail, how and where the incident took place. Other than Goode's statement that Sims "put his forearm into his neck," Goode's description is essentially mirrored in the video clips contained in the record. In particular, just as Goode described, he is shown on the video "swiveling" around Sims "going out the door," and Sims is shown walking backward in front of Goode. As Goode said, "*As I was going out the door when he did try to stop me, like a little bit before going out the door*, he put his forearm into my neck," and "he [(Sims)] was walking backwards." (Emphasis added). As such, we find that Goode's

17

contention that the videos do not show the complete incident is simply unsupported. Indeed, this contention is contradicted by the record.

¶34. Regarding the alleged physical assault, despite Goode's statement that Sims "put his forearm into [Goode's] neck" as he was going out of the store, our review of the video clips shows that there was no physical contact or even any discernible display of aggression between Goode and Sims. As such, Goode's assertion that he was physically assaulted by Sims is "blatantly contradicted" by "the story as depicted by the videotape." *Duckworth*, 10 So. 3d at 438 (¶12). Accordingly, "the *Scott* standard, adopted by [the supreme court] in *Duckworth*," *Thomas*, 360 So. 3d at 211 (¶26), applies to the evidence in this case. *Cf. Thomas*, 360 So. 3d at 211 (¶¶24-26) (finding that the *Scott* standard did not apply where three witnesses testified that there was water pooled around the pool deck where the plaintiff slipped, and the video, itself, showed the pool deck "surrounded by a discolored area" that a "reasonable jury could find . . . [was] water").

¶35. We recognize that the record also contains medical records from Goode's emergency room visit six days after the incident that Goode claims support his assault claim. But the medical records merely state Goode's version of what happened, as follows:

> Patient states he had a fusion performed 3 months ago and is currently [in] physical therapy but on the 19th of this month he was "assaulted at Walmart." Patient states he has not seen anyone since then for his neck pain. Patient states the pain is more "like a cramp." Patient denies any neurological deficits or changes in sensation.

Goode's self-serving statement that he was "assaulted at Walmart" is hearsay and, thus, is

18

not competent proof for summary judgment. *Henley, Lotterhos & Henley PLLC v. Bryant*, 361 So. 3d 621, 630 (¶29) (Miss. 2023) ("Hearsay statements that would not be admissible at trial are incompetent to support or oppose summary judgment."); *see generally*, 29A Am. Jur. 2d *Evidence* § 793 (updated May 2023) ("Self-serving declarations, that is, statements made by a defendant in his or her own favor, are not admissible in evidence as proof of the facts asserted."). Indeed, Goode's statement—that he was "assaulted at Walmart"—provides no information about how his alleged assault related to his neck pain. But even if it could possibly be admissible as a statement for purposes of medical diagnosis, *see* MRE 803(4), this statement, just like a similar statement he makes in his affidavit, is "blatantly contradicted" by the video clips discussed above.

¶36. Based upon our de novo review of the record, including Goode's detailed deposition testimony regarding the incident, Goode's affidavit, the video clips, and Goode's emergency room medical records, we find that Goode's assault claim is so "blatantly contradicted by the record . . . that no reasonable jury could believe it." *Thomas*, 360 So. 3d at 211 (¶25). Because Goode has failed to submit the requisite "significant probative evidence" to show that a genuine issue of material fact exists with respect to his assault claim against Wal-Mart, *see Borne*, 12 So. 3d at 570 (¶16), we affirm summary judgment in Wal-Mart's favor on this claim.

### III. Emotional Distress

¶37. Goode asserts that he has demonstrated that there exists genuine issues of material fact

with respect to his claims for intentional and negligent infliction of emotional distress. Goode alleged in his complaint that he suffered emotional distress because he was "wrongfully convicted of shoplifting." Goode stated in his affidavit filed in opposition to Wal-Mart's motion for summary judgment that he felt "violated and humiliated" by Sims's actions and that Sims's actions caused him to "suffer[] sleepless nights, nausea, dizziness, periods of extreme anxiety, uncertainty about [his] future life[,] and uncertainty about [his] ability to gain employment or be successful in business endeavors." For the reasons discussed below, we find that Goode did not present sufficient proof to raise a genuine issue of material fact as to either of his emotional distress claims. We therefore affirm summary judgment on these claims.

### A.     Intentional Infliction of Emotional Distress

¶38.    To survive summary judgment on his intentional infliction of emotional distress claim, Goode must show the existence of a genuine issue of material fact with respect to each of the following elements:

> (1) The defendant acted willfully or wantonly towards the plaintiff by committing certain described actions; (2) the defendant's acts are ones "which evoke outrage or revulsion in civilized society"; (3) the acts were directed at, or intended to cause harm to, the plaintiff; (4) the plaintiff "suffered severe emotional distress as a direct result of the acts of the defendant"; and (5) "such resulting emotional distress was foreseeable from the intentional acts of the defendant."

*Pointer v. Rite Aid Headquarters Corp*., 327 So. 3d 159, 170 (¶41) (Miss. Ct. App. 2021), *cert. denied*, 328 So. 3d 1253 (¶41) (Miss. 2021) (quoting *Rainer v. Wal-Mart Assocs. Inc*.,

119 So. 3d 398, 403-04 (¶19) (Miss. Ct. App. 2013)).

¶39. "Mississippi's standard for a claim of intentional infliction of emotional distress is very high, 'focusing specifically on the defendant's conduct and not the plaintiff's emotional condition.'" *Orr v. Morgan*, 230 So. 3d 368, 376 (¶18) (Miss. Ct. App. 2017) (quoting *Robinson v. Hill City Oil Co.*, 2 So. 3d 661, 668 (¶26) (Miss. Ct. App. 2008)). "Under [Mississippi] law, liability does not extend to mere insults, indignities, threats, annoyances, petty oppression, or other trivialities." *Raiola v. Chevron U.S.A. Inc.*, 872 So. 2d 79, 85 (¶23) (Miss. Ct. App. 2004). On the contrary, as the supreme court recognized in *Speed v. Scott*, 787 So. 2d 626 (Miss. 2001), the "necessary severity" of the defendant's acts requires a showing of conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 630 (¶18).

¶40. According to Goode, his emotional distress was caused by his alleged "wrongful[] . . . shoplifting [conviction]." We find no evidentiary basis for this statement in the record. To be precise, we find no evidence that Wal-Mart's conduct in filing shoplifting charges against Goode led to a "wrongful conviction." There is no evidence that the State obtained Goode's criminal shoplifting conviction in municipal court by fraud or other wrongful conduct. The State's subsequent decision to abandon the pursuit of charges against Goode after he appealed it is immaterial; "a nolle prosequi order is not an actual acquittal . . . [that would serve] to bar another prosecution." *State v. Shumpert*, 723 So. 2d 1162, 1165 (¶15) (Miss.

21

1998) (citing *Beckwith v. State*, 615 So. 2d 1134, 1147-48 (Miss. 1992)).

¶41. We further note that if a defendant has probable cause to initiate prosecution, "no reasonable juror could find that . . . . detention, handcuffing, and arrest" constitutes intentional infliction of emotional distress. *Lee*, 200 So. 3d at 1139 (¶32). As we have detailed above, we find that the undisputed evidence shows that Sims had probable cause—i.e, "an honest belief in [Goode's] guilt . . . and reasonable grounds for that belief," *id*. at 1138 (¶29) (internal quotation marks omitted)—to approach Goode, question him, and call the police.

¶42. Upon review, we find no evidence in the record that would support a claim that Wal-Mart's or Sims's conduct was outrageous, extreme, or "utterly intolerable in a civilized community" so as to support a finding of intentional infliction of emotional distress. *Speed*, 787 So. 2d at 630 (¶18). Accordingly, we find no error in the circuit court granting summary judgment in the defendants' favor on this claim.

### B. Negligent Infliction of Emotional Distress

¶43. Likewise, because we find that Sims acted with probable cause in approaching Goode, questioning him, and calling the police, "we also find that [Sims's] actions were not negligent so as to support a finding of negligent infliction of emotional distress." *Coleman v. Smith*, 914 So. 2d 807, 813 (¶18) (Miss. Ct. App. 2005) (determining that casino security officer's actions did not support defendant's claims of negligent infliction of emotional distress where the security officer "acted with probable cause and without malice in having

[defendant] arrested"). Goode's claim of negligent infliction of emotional distress fails for this reason.

¶44. Additionally, "[t]he tort of negligent infliction of emotional distress requires a plaintiff to plead and prove some sort of injury or demonstrable harm, whether it be physical or mental, and that harm must have been reasonably foreseeable to the defendant." *Orr*, 230 So. 3d at 377 (¶23) (internal quotation marks omitted). In the case before us, Goode alleges that Sims's treatment caused him "sleepless nights, nausea, dizziness, . . . anxiety, [and] uncertainty about [his] future." He presented no evidence of any treatment he received linked to these alleged conditions. The Mississippi courts have found that similar allegations, alone, are insufficient as a matter of law to establish negligent infliction of emotional distress. For this additional reason, we affirm the circuit court's granting summary judgment in the defendants' favor on Goode's claim of negligent infliction of emotional distress. *See Alston v. Miss. Dep't of Emp. Sec.*, 300 So. 3d 543, 549 (¶17) (Miss. Ct. App. 2020) (affirming dismissal of plaintiff's claim of negligent infliction of emotional distress, observing that while plaintiff claimed he received mental health treatment as a result of defendant's conduct, he failed to present any "facts or evidence . . . that link[ed] [his] treatment to any wrongdoings of [the defendant]"); *see also Mark v. City of Hattiesburg*, 362 So. 3d 1099, 1107 (¶18) (Miss. Ct. App. 2019) (finding that plaintiff's testimony that the defendants' "conduct devastated her, caused her to not want to see visitors, resulted in a loss of appetite and weight, and made her physically ill" constituted insufficient proof of any

23

mental injury caused by the defendants' conduct to survive summary judgment); *see generally Ill. Cent. R. Co. v. Hawkins*, 830 So. 2d 1162, 1175 (¶27) (Miss. 2002) (testimony "regarding nightmares and sleeplessness" and three visits "to an unnamed doctor" insufficient to support damages award for emotional distress); *Adams v. U.S. Homecrafters Inc.*, 744 So. 2d 736, 744 (¶27) (Miss. 1999) (finding that "vague testimony about loss of sleep and worry [about defendant's conduct] . . . was insufficient to support an instruction or award of damages for emotional distress"); *Strickland v. Rossini*, 589 So. 2d 1268, 1276 (Miss. 1991) (testimony that plaintiff was "very depressed, very upset, emotional, and not able to sleep" insufficient to allow recovery for emotional distress based upon ordinary negligence).

## IV.   Abuse of Process

¶45.   Goode alleges that because Wal-Mart did not bring shoplifting charges against him until after he filed assault charges against Sims, Wal-Mart did so in retaliation. Goode claims this constitutes an abuse of process. We find this assertion is without merit and, therefore, affirm summary judgment in favor of the defendants on this claim.

¶46.   The elements of an abuse of process claim are as follows: "(1) the party made an illegal use of a legal process, (2) the party had an ulterior motive, and (3) damage resulted from the perverted use of process." *Ayles ex rel. Allen v. Allen*, 907 So. 2d 300, 303 (¶10) (Miss. 2005); *see Croft*, 910 So. 2d at 76 (¶37).

¶47.   Goode's "abuse of process" claim appears to be based on Wal-Mart's filing the

24

criminal complaint for shoplifting against him. But where an abuse-of-process claim is based upon the filing of a lawsuit, as here, the supreme court has held that "[i]t cannot be argued that the process of the court was abused by accomplishing a result not commanded by it or not lawfully obtainable under it when the only process involved was a simple summon[s] to defend the suit." *Edmonds v. Delta Democrat Pub. Co.*, 230 Miss. 583, 593-94, 93 So. 2d 171, 175 (1957); *see Moon v. Condere Corp.*, 690 So. 2d 1191, 1197 (Miss. 1997) (no cause of action for abuse of process where "the only process involved . . . was the summons" and "there was no improper use of process after it had been issued"). In this case, Wal-Mart simply filed a criminal complaint for shoplifting and the State pursued the charge. Goode has failed to identify an "illegal" use of legal process in this case. We find that his abuse-of-process claim fails for this reason.

¶48. Also, upon review, we find no evidence in the record to support Goode's assertion that Wal-Mart filed the shoplifting charges to retaliate for his filing assault charges against Sims. To be sure, Wal-Mart did not file the shoplifting complaint against Goode until after Goode filed assault charges against Sims. But Sims stated in his deposition that he did not know Goode or his identity on the day of the incident, and we find no evidence in the record to the contrary. Without knowing Goode's name and identity, Wal-Mart could not file shoplifting charges against him. Sims learned Goode's name on October 29, 2019, from another Wal-Mart employee, and criminal shoplifting charges were filed against Goode less than a week later on November 4, 2019, after a Wal-Mart asset protection manager investigated and

25

approved the charges. Sims found out that Goode had filed assault charges against him when he arrived at the police station on November 4 to file the shoplifting charges against Goode. As such, we find no evidentiary support for Goode's retaliation allegations.

¶49. Goode's abuse-of-process claim also fails because when a defendant has probable cause to instigate criminal proceedings against a suspected thief, there can be no abuse of process. *Croft*, 910 So. 2d at 76 (¶37). In *Croft*, the plaintiff was discharged from his employment with Grand Casino-Tupelo and arrested for petit larceny for taking a $100 token. *Id.* at 69 (¶1). After the charges were dismissed, the plaintiff filed a lawsuit against Grand Casino-Tupelo, asserting, among other matters, that his arrest constituted abuse of process. *Id.* at 75 (¶33). This Court affirmed the grant of summary judgment in the defendant's favor on the claim, finding that the plaintiff failed "to show an illegal and improper perverted use of the legal process which was neither warranted nor authorized." *Id.* at 76 (¶37). Specifically, this Court emphasized that the plaintiff's "argument on this point necessarily fails because as we have held above the defendants had probable cause when the affidavit [charging plaintiff with petit larceny] was filed." *Id.*

¶50. Similarly, in *Hudson v. Palmer*, 977 So. 2d 369 (Miss. Ct. App. 2007), this Court affirmed the trial court's grant of summary judgment on plaintiff Hudson's abuse of process claim. *Id.* at 381 (¶31). We found that "nothing in the record suggests that [defendant] had any ulterior motive or purpose in having process issued." *Id.* Rather, the "[defendant's] undisputed affidavit establishes that he had a reasonable belief that based upon Hudson's

phone calls and threats, he was within his rights to file charges against Hudson [for disturbing the peace]. The trial court's grant of summary judgment as to this issue is affirmed." *Id.*

¶51. As in these cases, Goode's abuse-of-process claim also fails because, as we have discussed above, we find that Wal-Mart had probable cause to approach and question Goode and subsequently file the shoplifting complaint against him. This determination is supported by our review of the record, including the store surveillance video, photographs of the evidence,[8] and the deposition testimony of both Sims and Goode. Goode's filing assault charges against Sims is not proof that Wal-Mart made an illegal use of process or had an ulterior motive for exercising an illegal use of process. As noted, Sims did not know the assault charges had been filed until he went to the police department to file the shoplifting charges against Goode. For these reasons, we affirm the circuit court's order granting summary judgment in the defendants' favor on Goode's abuse-of-process claim.

## V. Negligence

¶52. To prove his negligence claim, Goode must establish "(a) that [Wal-Mart] owed him a duty; (b) that [Wal-Mart] breached that duty; (c) damages; and (d) proximate causation." *Lee*, 200 So. 3d at 1137 (¶24). "The standard of care in negligence cases is whether the

---

[8] These photographs include Goode's October 19, 2019 receipt showing he paid $1.00 (instead of $9.96) per hoodie; store signage showing the $9.96 price of the hoodies on that date; the incorrect peel and stick "$1.00" label on one of the hoodies Goode purchased; and the correct $9.96 price tag on another hoodie that Goode did not scan.

defendant 'acted as a reasonable and prudent person would have under the same or similar circumstances.'" *Brooks v. Jeffreys*, 368 So. 3d 356, 361 (¶12) (Miss. Ct. App. 2023) (quoting *Donald v. Amoco Prod. Co.*, 735 So. 2d 161, 175 (¶48) (Miss. 1999)).

¶53. Goode's sole assertion on appeal is that if a jury believes that "Sims's actions were . . . unreasonable, then the jury can find for [Goode] on the basis of negligence." But as we have addressed above, we find no genuine dispute that Sims stopped and questioned Goode in a reasonable manner. Stated in terms of Goode's burden of proof on his negligence claim, we find that Goode has not presented sufficient, probative evidence to create a genuine issue of material fact that Sims's actions during the course of the incident were unreasonable.

¶54. We further find that Goode failed to present evidence sufficient to create a jury question that any action on Sims's or Wal-Mart's part proximately caused his alleged injuries. Specifically, Goode alleged in his complaint that he suffered "physical injuries" and "pain and suffering" due to defendants' actions. But we have found that Goode failed to present evidence sufficient to create a jury question that Sims assaulted him or that there was an abuse of process on the part of Wal-Mart or Sims. We have also found that Goode failed to show that genuine issues of material fact exist with respect to his claims for intentional and negligent infliction of emotional distress, nor did Goode present sufficient proof to allow recovery for emotional distress based upon ordinary negligence. *See, e.g.*, *Strickland*, 589 So. 2d at 1276. Goode makes no other argument supporting his allegations that he suffered "physical injuries" or "pain and suffering" attributable to any actions on the part of Sims or

28

Wal-Mart. Because he cannot show his alleged injuries were proximately caused by the defendants, Goode's negligence claim fails for this additional reason. Accordingly, we find no error in the circuit court's order granting summary judgment in the defendants' favor on Goode's negligence claim against them.

¶55. **AFFIRMED.**

**BARNES, C.J., WESTBROOKS, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR. WILSON, P.J., AND McDONALD, J., CONCUR IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. GREENLEE, J., NOT PARTICIPATING.**